UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEREMY M. WEISS, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION NO. 1:10-CV-10705-NG <br> ) |
| DHL EXPRESS, INC., | ) <br> ) |
| Defendant. | ) <br> ) |

## **DEFENDANT'S OPPOSITION TO MOTION *IN LIMINE***

Defendant DHL Express, Inc. ("DHL" or "Defendant"), by and through its attorneys, Seyfarth Shaw LLP, respectfully opposes Plaintiff Jeremy Weiss's ("Weiss" or Plaintiff") Motion *in Limine* Regarding Investigative Report and Appendices ("Motion"). Plaintiff's Motion seeks to bar the introduction of DHL's "Report of Independent Investigation for DHL Express" ("Investigative Report"), arguing that the Investigative Report is hearsay. Plaintiff is wrong: DHL seeks to introduce the Investigative Report for non-hearsay reasons, namely, to defend against Plaintiff's allegations that Plaintiff's employment was terminated "without good cause," the standard applied by Massachusetts courts in analyzing Plaintiff's claim of breach of the implied covenant of good faith and fair dealing.[1] Regardless, the Investigative Report is admissible as a business record. For the reasons set forth below, Defendant requests that Plaintiff's Motion be denied in its entirety.

---

[1] As noted by Magistrate Judge Sorokin in his Report and Recommendation on Defendant's Motion for Summary Judgment ("R&R"), Docket No. 35, Counts III and IV depend upon whether good cause existed to terminate Plaintiff's employment.

## ARGUMENT

A.  **In Order To Succeed On His Claims, Plaintiff Must Prove That DHL Was "Without Good Cause" To Terminate His Employment And That DHL Denied Him Compensation Clearly Related To His Past Services.**

The Court already has concluded that Plaintiff cannot prove that DHL terminated him in bad faith, *see* R&R at p. 12.  Plaintiff's burden now is to prove at trial that DHL terminated him "without good cause," and that as a result Plaintiff was denied identifiable, anticipated compensation "so clearly related to [his] past service." *See Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 672 (1981); *York v. Zurich Scudder Investments, Inc.*, 849 N.E.2d 892, 899 (Mass. App. Ct. 2006).

Good cause exists where an employer's "grounds for discharge reasonably related, in the employer's honest judgment, to the needs of [its] business." *York, supra*; *Joyal v. Hasbro, Inc.*, 380 F.3d 14 (1st Cir. 2004).  "Honest judgment is assessed in the general principles that an employer is entitled to be motivated by and to serve its own legitimate business interests; that an employer must have wide latitude in deciding whom it will employ in the face of uncertainties in the business work, and that an employer needs flexibility in the face of changing circumstances." *York, supra* at 899-900.[2]

B.  **The Investigative Report is Not Hearsay Because It Is Being Used To Establish That DHL's Decision To Terminate Plaintiff Was Reasonably Related, In DHL's Honest Judgment, To Its Business Needs.**

The Investigative Report is not hearsay because it is not necessary for DHL to offer it to prove the truth of any statements contained therein or the appendices attached thereto.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing,

---

[2] Irrespective of his burden to show that his termination was without good cause, Plaintiff must also prove that his termination caused him to lose earned, clearly identifiable compensation clearly related to his past services.  In other words, he must prove that DHL enjoyed a definable, financial windfall as a result of its decision to terminate Plaintiff. *Gram v. Liberty Mut. Ins. Co.*, 391 Mass. 333, 335 (1984).  As a matter of law Plaintiff is not entitled to future compensation based on future services, which is what the Bonus Plan provided for. *Id.*

offered into evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). In 2009, DHL retained an independent attorney to conduct an investigation. In the course of that investigation, the attorney concluded that Plaintiff knew or should have known of misconduct by sales representatives and failed to notify the Company or otherwise take appropriate corrective action. In reliance on the Investigative Report, DHL thus reasonably, and in its honest judgment, concluded that it was in DHL's best interests to terminate Plaintiff's employment. DHL's reliance on the Investigative Report thus establishes its state of mind and that its termination of the Plaintiff was *not* "without good cause."

Indeed, on summary judgment, Plaintiff himself admitted that the Investigative Report is admissible and relevant on the issue of whether DHL acted in good faith: "These paragraphs [that cite to the Investigative Report] do not establish admissible evidence of the underlying facts, *only of the assertion that TWG* [the law firm that conducted the investigation] *informed DHL of the matters*." See Docket No. 23, p. 4, fn. 3. Plaintiff also admitted that whether certain matters or findings were reported to DHL are relevant "to the question of whether DHL acted in bad faith toward Jeremy Weiss." *Id.*, p. 4. By Plaintiff's own admissions, the Investigative Report is relevant to, and admissible for, the purpose of establishing whether good cause existed. On this basis alone, Plaintiff's Motion should be denied.[3]

---

[3] The cases cited by Plaintiff, *Osterneck v. E.T. Barwick Indust., Inc.*, 106 F.R.D. 327 (N.D.GA 1984) and *U.S. v. Reeder*, 170 F.3d 93, 108 (1st Cir. 1999) are inapposite. In *Osterneck*, the U.S. District Court for the Northern District of Georgia excluded certain portions of reports where it was unclear what records or worksheets were reviewed by the individuals who created the reports. 106 F.R.D. at 335-336. Additionally, there was no discussion of whether the reports at issue were relevant to a party's state of mind. Here, the Investigative Report clearly identifies the information that the investigator relied on in reaching his findings, and the Investigative Report will be used to establish DHL's state of mind when it decided to terminate Plaintiff. In *Reeder*, the First Circuit affirmed the exclusion of a letter drafted by an attorney, where there was no evidence that the intended recipient had actually received the letter. 170 F.3d at 108. Additionally, the court ruled that the issue for which the letter was intended to be introduced -- the details of certain financial restructurings -- was irrelevant. *Id.* Here, there is no dispute that DHL received the Investigative Report from the investigator (in addition to oral updates throughout the investigative process), and the report and the conclusions contained therein are directly relevant to DHL's state of mind.

3

### C. Alternatively, The Investigative Report Is Admissible As A Business Record Pursuant To FED. R. EVID. 803(6).

Alternatively, the Investigative Report is admissible as a business record. Under the business record exception to the Hearsay rule, a document that otherwise might constitute hearsay is admissible where: (a) it was made at or near the time by someone with knowledge; (b) was kept in the course of DHL's regular business activities; (c) making the record was a regular practice of that activity; (d) these conditions are shown by the testimony of a qualified witness; and (e) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness. FED. R. EVID. 803(6). DHL should be permitted at trial to put on evidence establishing that the Investigative Report is a business record.

Here, all of the elements of Rule 803(6) support the admissibility of the Investigative Report as a business record. Mr. Thompson, an independent attorney, conducted the investigation at DHL's behest and has knowledge of the facts based upon the investigation and his interviews with numerous witnesses; at trial, DHL will be able to show that as a matter of policy it regularly investigates allegations of employee misconduct and documents such investigations; and there is nothing to suggest that the investigation conducted by Mr. Thompson and his firm, or the information on which they relied, lacks trustworthiness. In these circumstances, the Investigative Report should be admitted as a business record. *See Crimm v. Missouri Pacific RR Co.*, 750 F.2d 703, 709 (5th Cir. 1984) (investigative report regarding allegations of sexual harassment admissible as a business record where the employer had a policy regarding investigations); *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999) (investigative report prepared by company's insurer admissible as a business record). That DHL delegated the investigation and the preparation of the Investigative Report to outside counsel does not alter the underlying fact that the Investigative Report was prepared in the

4

regular course of business and may be a business record under Rule 803. *Osterneck v. E.T. Barwick Indust., Inc.* 106 F.R.D. 327 (N.D. GA 1984) (portions of reports and summaries prepared by outside entity may be considered a Rule 803 business record where entity was under a business duty to prepare accurate report).

      **D.**    **The Investigative Report Also Is Admissible Pursuant to FED. R. EVID. 807.**

The Investigative Report is being offered as evidence of a material fact (the fact of the investigation and the communication of the investigator's findings to DHL); it is more probative on that point than any other evidence which DHL can procure through reasonable efforts (a detailed report, rather than having each interviewee testify at trial and authenticate each document provided to the investigator); and the interests of justice will be served as the jury will have a complete picture of the nature and extent of the investigation that DHL undertook before it terminated Plaintiff. Finally, Defendant notified Plaintiff of its intent to offer the Investigative Report.

      **E.**    **Kenneth Thompson, The Author Of The Investigative Report, Will Testify And Be Subject To Cross Examination.**

Defendant intends to call Kenneth Thompson, one of the authors of the Investigative Report, as a witness, and Mr. Thompson will introduce and authenticate the Investigative Report. Thus, Plaintiff will be afforded ample opportunity to cross-examine Mr. Thompson regarding the basis of his firm's findings and the manner in which his firm communicated the findings to DHL.[4]

---

[4] Although the Investigative Report was not circulated in its final form until the day after DHL terminated Plaintiff, there is no evidence disputing DHL's evidence that it received information orally, and that it relied on this information, before it received the final version of the written report. R&R, p. 7, fn. 6. Michael Berger, the person who recommended that DHL terminate Plaintiff, testified (and will testify at trial) that he was briefed throughout the course of the investigation. *Id.*

### F. Plaintiff Waived Any Objection To The Admissibility Of The Investigative Report.

Plaintiff waived any objection to the admissibility of the Investigative Report and its appendices by affirmatively relying on it in his opposition to DHL's motion for summary judgment and by failing to properly object to the Court's reliance on the Investigative Report in its summary judgment decision.

In his opposition to Defendant's motion for summary judgment, Plaintiff argued that, "[t]he [Investigative] Report which provides DHL the cover for its cause characterization *itself serves as the evidentiary basis for the* Fortune *claim*." Docket No. 22, p. 19 (emphasis added). Plaintiff relied on the Investigative Report for his assertion that "no action beyond accepting Garcia's resignation was taken as a response to his alleged misconduct," and "three mid-level managers, including Weiss, were identified as having some supervisory authority over Garcia." *Id.* Additionally, in his Statement of Disputed Material Facts, Plaintiff relied on the Investigative Report for his assertion that DHL knew or reasonably should have known that an employee was associated with, and had been disciplined for, improper account set up. Docket No. 23, p. 10. Finally, in the R&R Magistrate Sorokin relied extensively on information found in the Investigative Report. *See* Docket No. 35, pp. 4-7. In his Objections to the R&R, Plaintiff never once asserted any objection to the court's reliance on facts premised on the Investigative Report.

By affirmatively relying on the Investigative Report in his opposition to Defendant's Motion for Summary Judgment and by failing to properly object to the Court's reliance on facts set forth in the Investigative Report, Plaintiff waived any right to assert that the Investigative Report is inadmissible at trial.

### G. Plaintiff Offers No Basis To Exclude The Appendices To The Investigative Report.

Other than cursory bald assertions, Plaintiff offers no substantive facts or arguments to ground his purported hearsay objection to certain unidentified portions of the appendix to the Investigative Report; indeed, he admits that some of the appendices are not hearsay, thereby contradicting his own argument for excluding the records.[5] Plaintiff has failed to sustain his burden as the moving party, and his Motion as to the appendices should be denied. Additionally, statements made by Plaintiff as captured in the Investigative Report are admissions by a party opponent, and thus not hearsay pursuant to FED. R. EVID. 801(d)(2). The information Plaintiff provided to the attorney investigator -- including documents attached as appendices to the Investigative Report -- is highly relevant to the issue of what Plaintiff knew or did not know, what he chose to do or not to do, and what he chose to disclose or not to disclose to DHL, all of which are critical factors in DHL's determination that it had good cause to terminate Plaintiff. Plaintiff concedes as much. Motion, p. 5 ("The trial should consist of evidence concerning what Weiss did or failed to do that gave the Company cause to fire him.").

### H. To The Extent The Court Is Concerned About Potential Prejudice, The Court May Issue A Limiting Instruction.

Despite the fact that there are solid bases for the admission of the Investigative Report and its appendices, Defendant respectfully submits that if the Court is concerned about potential confusion by the jury or prejudice to Plaintiff, the proper and most equitable resolution is for the Court to issue a limiting instruction to the jury. In the event this Court determines the Investigative Report is not admissible as a business record, then DHL proposes the following instruction: "The Investigative Report and the appendices thereto are not offered for the truth of

---

[5] Like the Investigative Report, the appendices are admissible to defend against the allegations that DHL's decision to terminate Plaintiff was without good cause.

any factual findings or assertions contained therein. Rather, they are relevant to the issue of whether Defendant reasonably and in its honest judgment had good cause to terminate Plaintiff."

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that the Court deny Plaintiff's Motion *in Limine* and grant Defendant the relief requested herein.

Respectfully submitted,
DHL EXPRESS, INC.
By its Attorneys,

/s/ Kristin G. McGurn
Kristin G. McGurn (BBO #559687)
Camille A. Olson, admitted *pro hac vice*
Richard B. Lapp, admitted *pro hac vice*
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

DATED: January 9, 2012

---

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2012, this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

/s/ Kristin G. McGurn
Kristin G. McGurn

---

14081582v.3